**GOLETA UNION ELEMENTARY SCHOOL DISTRICT; et al.,**
Plaintiffs,

v.

**Andrew ORDWAY; et al., Defendants,**

**And Related Counter–Claim.**

**No. CV 99–07745 DDP.**

United States District Court,
C.D. California,
Western Division.

Dec. 6, 2002.

See also 166 F.Supp.2d 1287.

Sharon A Watt, Andrew V Arczynski, Filarsky & Watt, Ojai, CA, for Goleta Union Elementary School District, Hope Elementary School District, Santa Barbara High School District, Santa Barbara County Special Education Local Plan Area, Santa Barbara County Office of Education, plaintiffs.

Marcy J K Tiffany, Marcy J K Tiffany Law Offices, Rancho Palos Verdes, CA, for Andrew Ordway, defendant.

Steven M Wyner, Steven M Wyner Law Offices, Manhattan Beach, CA, for Cynthia Ordway, defendant.

Marsha A Bedwell, Department of Education, Sacramento, CA, Joyce O Eckrem, Joyce D Eckrem Law Offices, Gardnerville, NV, for California Special Education Hearing Office, California Department of Education, defendants.

## ORDER GRANTING IN PART AND DENYING IN PART THE CROSS–MOTIONS FOR SUMMARY JUDGMENT BY CROSS–CLAIMANT AND COUNTER–DEFENDANT DIANA RIGBY

PREGERSON, District Judge.

This matter comes before the Court on the counter-claimant and counter-defendant cross-motions for summary judgment. Having considered the materials submitted by the parties, the matters raised at oral argument and the issues raised thereby, the Court adopts the following order.

### I. Background

This action stems from an administrative hearing appeal regarding alleged violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). The defendants are Andrew Ordway ("Andrew"), and his mother, Cynthia Ordway. Andrew has been a special education student since 1993. (Counter-

claimant's Statement of Genuine Issues, p. 1.)

The plaintiffs and counter-defendants filed this action on July 27, 1999, appealing the April 30, 1999 decision of a California Special Education Hearing Officer (the "Hearing Officer"). The Hearing Officer found, *inter alia*, that the plaintiffs failed to offer Andrew a free and appropriate public education ("FAPE") as required by IDEA, and that one or more of the plaintiffs should be required to reimburse Cynthia Ordway for Andrew's residential placement. (*See* Compl., Ex. 1 at 19–21.) The plaintiffs sought to set aside the Hearing Officer's findings, as well as additional declaratory relief and attorney's fees. (*See* Compl. at 13–15.)

On September 24, 1999, defendants California Department of Education and California Special Education Hearing Office answered the complaint. On October 18, 1999, defendant Cynthia Ordway filed an answer and a counter-claim. The counter-claim named the plaintiffs as counter-defendants, as well as Marcia McClish, both individually and as the director of SELPA, and Diana Rigby, both individually and as the Director of Student Services for the SBHSD. The counter-claim included the following allegations and causes of action: (1) the counter-defendants violated Ms. Ordway's rights under IDEA; (2) the counter-defendants violated Ms. Ordway's rights under Section 504 of the Rehabilitation Act; (3) the counter-defendants "acted in bad faith in denying Counterclaimant [sic] her statutory rights under IDEA, and thereby violated Section 1983"; (4) the counter-defendants "acted with intentional disregard for Counterclaimant's [sic] statutory rights under IDEA, and thereby violated Section 1983"; (5) the counter-defendants "acted in bad faith in denying Counterclaimant [sic] her statutory rights under Section 504 [of the Rehabilitation Act] and thereby violated Section 1983";

and (6) the counter-defendants "acted with intentional disregard for Counterclaimant's [sic] statutory rights under Section 504 [of the Rehabilitation Act] and thereby violated Section 1983." (Counter–Compl. at ¶¶ 97–108.) Subsequently, Ms. Ordway agreed to dismiss her second, fifth, and sixth counter-claims. (*See* Opp. to Mot. to Dismiss at 8–9.)

On August 10, 2001, the Court affirmed the Hearing Officer's findings in favor of defendants/counter-claimants on all grounds, with the exception of the finding that the AB 3632 assessment was completed in a timely manner. The Court reversed the Hearing Officer's decision regarding the assessment, and found in favor of the Ordways on that issue. The Court affirmed the Hearing Officer's monetary award and granted SEHO's and the Department of Educations' motions for summary judgment. The Court affirmed the hearing officer's decision that Andrew Ordway's rights secured by the IDEA were violated.

The counter-defendant then filed a motion for summary judgment on the issues of: (1) whether a civil rights action under § 1983 could be maintained based on a violation of IDEA; (2) whether the 11th Amendment barred the action against Rigby in her official capacity; and (3) whether Rigby was entitled to qualified immunity to the extent she is sued in her individual capacity. This Court denied the motion on August 8, 2001.

In the instant motion for summary judgment, the cross-defendant, Ms. Rigby, asks the Court to (1) reconsider its ruling that a civil rights action under § 1983 can be based on a violation of IDEA; (2) find that the counter-claim based on California Law is barred by the Tort Claims Act; (3) interpret the previous orders in this case to constitute a ruling on the third and fourth counter-claims in that negligence is

insufficient to sustain a claim under § 1983 for a violation of IDEA; (4) deny Cynthia Ordway's claims under IDEA inasmuch as they are based on rights held by her son Andrew; (5) find that the transfer of Andrew was not actionable conduct; and (6) read the "open enrollment" requirement of California law as a defense to Ms. Rigby's conduct.

The counter-claimant, Ms. Ordway, in her cross-motion, moves for summary judgment on the question of whether Ms. Rigby is liable under § 1983 for committing the following violations of IDEA: (1) transferring Andrew to La Colina Jr. High without assessing whether it was an appropriate placement; (2) transferring Andrew without developing goals and objectives pursuant to an Individualized education Plan ("IEP"); (3) denying Ms. Ordway's right to meaningfully participate in the IEP; (4) failing to convene an IEP meeting to develop an assessment plan and implement a behavioral intervention plan and conduct a timely manifestation determination; (5) failing to conduct a behavioral assessment and develop a behavior intervention plan; and (6) failing to timely refer Andrew for an AB 3632 placement.

## II. *Legal Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus,

the "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252, 106 S.Ct. 2505. In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Id.* at 242, 106 S.Ct. 2505.

## III. Analysis

### A. *The Motion for Reconsideration is Denied*

■ The counter-defendant, Ms. Rigby, first requests the Court to reconsider its previous ruling that a § 1983 claim can be based on a violation of IDEA. This, the Court declines to do. The cases cited by the counter-defendant neither raise new issues of fact or law, nor point to any issue that the Court has manifestly failed to consider. There has been, contrary to the counter-defendant's assertion, no Ninth Circuit case denying recovery under § 1983 for violations of IDEA decided since Congress amended IDEA's predecessor law in 1986. 20 U.S.C. § 1415(f). This Court's determination that a plaintiff can recover under § 1983 for violations of IDEA is founded on the Congressional intent evidenced by this amendment. Therefore, the counter-defendant offers no binding authority to support her position. The motion for reconsideration is denied.

### B. *Counter-claims Based on California Law*

*The counter-defendant moves for summary judgment on the counter-claims brought under the California Education Code § 56000 et seq., arguing that the action is untimely under the Tort Claims Act.*[1]

---

1. The Court is confused by the counter-defendant's assertion that a plaintiff cannot simultaneously maintain an action for violation of state and federal law where both apply. The counter-defendant cites no case to support this argument and, without more, the Court declines to rule on it.

■ The Court finds that the Tort Claims Act is inapplicable under these circumstances. The purpose of the Tort Claims Act is to provide governmental agencies with notice of the claims against them and provide them with sufficient information to investigate and settle claims, if appropriate, without the expense of litigation. *City of San Jose v. Superior Ct.,* 12 Cal.3d 447, 455, 115 Cal.Rptr. 797, 525 P.2d 701 (1974). There is no requirement to file a claim under the Act where the statute in question prescribes different claims filing procedures. Weil & Brown, *Cal. Prac. Guide: Civ. Pro. Before Trial* ¶ 1:660 (The Rutter Group 2001). For example, in *Snipes v. City of Bakersfield,* 145 Cal.App.3d 861, 865, 193 Cal.Rptr. 760 (1983), the court held that claims under the Fair Employment and Housing Act ("FEHA") do not implicate the Tort Claims Act as the FEHA contains its own claims filing procedures, insuring adequate notice. Likewise, where parties requesting monies from a state created fund were required to first file a claim with the fund, the Tort Claims Act was found inapplicable. *Becerra v. Gonzales,* 32 Cal.App.4th 584, 592, 38 Cal.Rptr.2d 248 (1995).

■ California enacted §§ 56500–56507 of the Education Code to comply *with the exhaustion requirement of IDEA.* 20 U.S.C. § 1415; *Porter v. Board of Tr.,* 307 F.3d 1064, 1068 (9th Cir.2002). The cross-claimants followed the procedures outlined in California law, including participating in a full hearing before a Special Education Hearing Officer. The Hearing Officer is under contract with the California Department of Education to provide due process hearings for claims under California Education Code § 56000 *et seq.* The State and its employees, therefore, were on notice of the claims before the filing of the instant action and the Tort Claims Act is inapplicable.

### C. *A § 1983 Claim for Violation of IDEA Does Not Require a Showing of Heightened Culpability*

■ The counter-defendant moves for summary judgment on the counter-claims maintaining that she cannot be held personally liable under § 1983 for violation of IDEA because mere negligence on the part of a government official is insufficient to support such a claim. The counter-defendant interprets this Court's previous ruling to be definitive on the subject of her culpability. This Court found that the counter-claimant failed to create a triable issue of fact as to whether Ms. Rigby acted with reckless or callous disregard for the rights of others. (10/15/01 Order.)

The language of § 1983 does not contain a state-of-mind requirement. The Supreme Court, however, has explored the issue of what level of culpability, if any, is required to establish a § 1983 violation where the claim was predicated on a violation of a constitutional right. In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court explicitly held that the negligent acts of a government official could not sustain a due process claim under § 1983. The Court reasoned that § 1983 does not create or establish any right but, instead, provides only a remedy for the violation of federal rights created by another source. As such, "in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." *Id.* at 330, 106 S.Ct. 662; *see also Pink v. Lester,* 52 F.3d 73, 74 (4th Cir. 1995) ("the requisite intent in a given [§ 1983] case turns upon the standard necessary to establish a violation of the underlying constitutional or statutory right"). Considering the source of the constitutional right at issue, the due pro-

cess clause of the Fourteenth Amendment, the Supreme Court found that negligent conduct could not support a § 1983 claim. *Id.* at 332, 106 S.Ct. 662.[2]

In contrast to *Daniels,* the underlying right at issue here is not constitutional, but statutory. The proper approach, therefore, is to look to IDEA. A showing of heightened culpability is not required to establish a violation of IDEA. Thus, all that is required to establish a § 1983 claim is proof of a violation of IDEA under color of law.

### D. *Parents May Sue Under § 1983 For All Violations Of IDEA*

■ The counter-defendant moves for summary judgment on the majority of the counter-claims, asserting that Ms. Ordway cannot maintain a cause of action under § 1983 for violations of IDEA that do not specifically implicate the enumerated rights granted to a parent.[3] This approach requires dissecting IDEA into categories of rights, some of which belong to the parents and some of which belong to the child.

Under § 1983 "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ..., subjects, or causes to be subjected any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." *Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 58 (1st Cir.2002). The key question is whether the actions of the party deprived the plaintiff of a federally secured right. *Id.* This Court has already ruled that § 1983 can support an

IDEA claim. However, the approach used to determine whether a specific statutory scheme supports § 1983 claims is instructive in answering the question presented here.

■ The Supreme Court has used a three factor test to determine whether or not a statutory provision creates an enforceable right (1) whether the plaintiff is an intended beneficiary of the statute; (2) whether the plaintiff's asserted interests are not so vague and amorphous as to be beyond the competence of the judiciary to enforce; and (3) whether the statute imposes a binding obligation on the state. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). In *Suter v. Artist M.,* 503 U.S. 347, 357, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court again addressed whether a statute created a right that could form the basis of a § 1983 claim and held that the statute in question must unambiguously conferred upon the intended beneficiaries a right to enforce the provisions of the statute. To determine the intended beneficiaries, one looks to the statutory language to see whether it is " 'phrased in terms of the persons benefitted.' " *Victorian v. Miller,* 813 F.2d 718, 720–21 (5th Cir.1987) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

The IDEA statement of purpose recognizes that the goal of the statute is "to ensure that the rights of children with disabilities *and parents of such children* are protected." 20 U.S.C. § 1400(d)(1)(B) (emphasis added). Moreover, IDEA un-

---

**2.** Ninth Circuit case law also requires a showing of heightened culpability to sustain a § 1983 claim based on a constitutional violation. *Stevenson v. Koskey,* 877 F.2d 1435 (9th Cir.1989) (holding that an officer's handling of an inmate's mail was at most negligent and, thus, did not reach the level of culpability necessary to permit a finding of personal

liability under § 1983); *Woodrum v. Woodward County,* 866 F.2d 1121 (9th Cir.1989).

**3.** The Court notes that this issue could be easily avoided by adding Andrew as a party to the counter-claim and questions why this has not been done.

ambiguously confers upon the parent beneficiaries of the statute an enforceable right to the procedural mechanisms that secure their disabled children a free and appropriate public education.[4] Courts have consistently recognized the importance of parents to the proper functioning of IDEA. *Porter v. Board of Tr. of Manhattan Beach*, 307 F.3d 1064 (9th Cir.2002); *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 882 (9th Cir.2001). The IDEA, therefore, intends to protect and benefit not only disabled children, but their parents, by recognizing that there is a unity of interest between the parent and the child in obtaining a free and appropriate education.

Moreover, the Court can find no precedent to support a parsing of IDEA into separate rights for parents and children. In contrast, the Supreme Court, analyzing the National Labor Relations Act ("NLRA") in the context of § 1983, held that the NLRA created rights in both labor and management. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). Next, the Court found that the petitioner, a taxi cab franchise owner, was an intended beneficiary "of a *statutory scheme* that prevents governmental interference with the collective-bargaining process..." *Id.* (emphasis added). The enforcement mechanism of IDEA evidences an intent to create a comprehensive statutory scheme benefitting both parents and children without distinction.

The IDEA gives parents the right to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). Parents are not limited to enforcing those procedures which directly address parental participation but can enforce any matter that relates to the provision of an appropriate education to their child. It was "[t]o ensure that the parents would not be silenced by the very forces that had once excluded disabled children from public education, [that] Congress granted parents the right to seek review of their child's IEP." *Heldman v. Sobol*, 962 F.2d 148, 151 (2d Cir.1992). It is the parents, then, who are specifically granted the right to an impartial due process administrative hearing. 34 C.F.R. § 300.506; *Radcliffe v. School Bd. of Hillsborough County*, 38 F.Supp.2d 994, 998 (M.D.Fla. 1999). Upon the competition of the administrative process, "any party aggrieved by the findings and decision ... shall have the right to bring a civil action with respect to the complaint." 20 U.S.C. § 1415(i)(2). Parents, therefore, have standing under IDEA to assert violations of any matter relating to their child's receipt of a free and appropriate public education.

Finally, to deny parents a free standing right to enforce all of the procedures of IDEA would be inconsistent with the structure and format of IDEA. Although IDEA is designed to provide disabled children with a "free and appropriate public education," Congress did not choose to establish precise substantive rights; instead, it created numerous procedures to ensure and protect that right. 20 U.S.C. § 1400(c).

---

**4.** Ms. Rigby makes much of the requirement that § 1983 rights be "personal", citing to numerous cases wherein a parent was unable to bring a claim for violation of a child's civil rights. These cases, however, do not address § 1983 claims based on statutory violations.

In the context of an alleged violation of a right guaranteed by federal law, the Supreme Court has looked to the language of the statute to determine the statute's intended beneficiaries.

IDEA's procedural guarantees, however, serve not only to guarantee the substantive rights accorded by the Act; the procedural rights, in and of themselves, form the substance of the IDEA.... The central role of the IDEA process rights bears witness that Congress intended to create procedural rights the violation of which would constitute an injury in fact.

*Heldman,* 962 F.2d at 155. The parents are the critical component in these procedures, and it is through their participation that the process is successful. To separate out each procedure as a right granted individually to one beneficiary or the other belies the intent to create a system of procedures, that, when functioning properly, secures to disabled children, and the parents responsible for them, a free and appropriate public education.

### E. *The Specific Liability of Counter–Defendant Rigby*

The remainder of the counter-defendant's claims, and all of the counter-claimant's requests for summary judgment, require specific findings regarding Ms. Rigby's liability to Ms. Ordway.[5]

### 1. *Andrew's Placement at La Colina*

 The counter-defendant argues that there can be no judgment against her for the placement of Andrew in La Colina Junior High, because a transfer within the district does not require an IEP under IDEA.[6]

This Court has twice now stated that "SBHSD should have assessed independently the causes of Andrew's behavior and whether moving him to La Colina would be an appropriate placement." (Order 10/15/01 at 26 n.11 (quoting Order 8/13/01 at 19:11–13).) There is, therefore, no need to revisit whether or not an assessment of the appropriateness of the transfer was required. Moreover, this Court held that the only conduct for which Ms. Rigby could be held personally liable under § 1983 was failing to investigate whether La Colina would be an appropriate placement for Andrew. (Order 10/15/01 at 24.)[7] Further, the Hearing

---

**5.** The counter-defendant makes separate evidentiary objections protesting any assertions by the counter-claimant that this Court's previous orders resulted in findings of fact. The Court may have found that there was no genuine issue of material fact, but these are not "findings" of fact. The counter-defendant further takes exception to any reliance of the SEHO order or evidence presented in support thereof as inadmissible hearsay. The counter-defendant is correct that this Court's review of the SEHO's decision essentially functioned as determination of cross-motions for summary judgment. In that sense, it does not contain findings of fact, but may have determined that no material issue of fact remained. (Order 8/13/01 at 1.)

**6.** The counter-defendant also maintains that the "open enrollment" requirement of California law, which is translated into a school district policy granting parents permission to request an intra-district transfer, required her to honor Ms. Ordway's request for a transfer

to La Colina without question. The Court finds no merit in this argument. The policy of a school district cannot serve as a defense to Ms. Rigby's failure to meet her responsibilities under IDEA.

**7.** The counter-defendant would have the Court leave open the issue of qualified immunity for Ms. Rigby, claiming that the previous order denying summary judgment was not dispositive. As the counter-defendant offers nothing to refute the evidence offered by the counter-claimant in support of the initial order denying summary judgment or the current motion requesting it, she fails to create a triable issue of fact on this question. Summary judgment is therefore granted based on this Court's previous order, and the unrefuted evidence presented in support thereof, that Ms. Rigby is not entitled to the defense of qualified immunity for her failure to investigate the propriety of Andrew's placement. (Order 10/15/01 at 19–30.)

Officer found, and this Court affirmed, that the plaintiffs, including Ms. Rigby, denied Andrew a FAPE by, inter alia, failing to offer him an appropriate placement. (Order 8/13/01 at 19.) It was evidence of Ms. Rigby's actions that supported this finding. Thus, the Hearing Officer, in a determination affirmed by this Court, already implicitly found that Ms. Rigby's conduct constituted a violation of IDEA.

As well, this Court has already noted, twice, that "Ms. Rigby testified that she moved Andrew to La Colina at the request of Ms. Ordway. Ms. Rigby did this without investigating whether La Colina would be an appropriate placement because she 'honor[s]' parental requests." (10/15/01 Order at 22 n.9 (quoting 8/10/01 Order at 19).) The counter-defendant offers no evidence to create a triable issue of fact as to whether or not Ms. Rigby actually conducted an investigation into the appropriateness of La Colina as a placement of Andrew. As there can be no dispute that Ms. Rigby acted under the "color of law," the Court finds that the counter-claimant is entitled to summary judgment on the § 1983 claim against Ms. Rigby in her individual capacity for failing to investigate the appropriateness of Andrew's placement at La Colina.

### 2. *The Remainder of the Claims Against Ms. Rigby are Denied*

█ The counter-claimant moves for summary judgment against Ms. Rigby, claiming that she was personally responsible for overseeing a variety of procedures required by IDEA in Andrew's case. The counter-claimant's request for summary judgment is based on the Hearing Officer's determination regarding SBHSD's responsibilities and duties. This Court has already held that Ms. Rigby's liability *under § 1983 cannot be premised on a theory of respondeat superior.* (Order 10/15/01 at 24.) Further, this Court held the Hearing

Officer's findings implicating SBHSD's cannot be translated into a finding of personal liability against Ms. Rigby. (*Id.* ("Any findings on the part of the Hearing Officer or this Court relating to the conduct of SBHSD may not be attributed to Rigby herself.").) This Court *specifically* found that the sole action that could be attributed to Ms. Rigby was the failure to investigate the appropriateness of the placement of Andrew in La Colina. (*Id.*) Summary judgment based on qualified immunity is therefore granted to the counter-defendant on all of the counter-claimants remaining claims.

### IV. Conclusion

In light of the upcoming trial, the parties are ordered to meet and confer and prepare a joint statement summarizing any remaining issues in this case. The statement shall be submitted within two weeks of the date of this order.

### A. *Counter–Claimant's Motion for Summary Judgment*

For the reasons above, summary judgment is granted for the counter-claimant on the question of Ms. Rigby's liability in her individual capacity for failing to investigate Andrew's placement at La Colina. Summary judgment is granted to counter-defendant Ms. Rigby for the remaining claims against her.

### B. *Counter–Defendant's Motion for Summary Judgment*

For the reasons above, counter-defendant's motion for reconsideration is denied. Summary judgment is denied on the California Education Code § 56000 *et seq.* cause of action. Summary judgment is granted on all issues of liability beyond

Ms. Rigby's failure to investigate the La Colina placement.

IT IS SO ORDERED.