[No. B179322. Second Dist., Div. One. Aug. 1, 2005.]

BENJAMIN G., a Minor, etc., Plaintiff and Appellant, v.
CALIFORNIA SPECIAL EDUCATION HEARING OFFICE, Defendant and
Respondent;
LONG BEACH UNIFIED SCHOOL DISTRICT, Real Party in Interest and
Respondent.

COUNSEL

Law Offices of Bonnie Z. Yates, Bonnie Z. Yates and Melanie Segal for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Atkinson, Andelson, Loya, Ruud & Romo, Karen E. Gilyard, Ian Wade and Marlon C. Wadlington for Real Party in Interest and Respondent.

OPINION

**VOGEL, J.**—IDEA, the federal Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.) and the concomitant California special education programs (Ed. Code, § 56000 et seq.) were enacted to make public education available to children with disabilities and other exceptional needs.[1] To that end, a potentially eligible child is identified, then assessed by his school district to determine his eligibility, and an individualized education program is prepared. Parental input is sought at every stage, and parents have a statutory right to challenge the district's eligibility assessment or proposed placement or both. If the parents contest the district's assessment, they have a right to an independent educational assessment at the district's expense. If the parents disagree with the district's proposed placement, the parents may unilaterally enroll their child in a private school and seek reimbursement from the district.

When disputes arise, parents have the right to an administrative hearing at which they may present evidence, including testimony by independent experts. If the challenge is to the district's eligibility finding and the parents have obtained an independent educational assessment, they are entitled to have their independent assessor observe their child in his current or proposed education placement or both. This much is conceded, and the dispute before us on this appeal arises in a slightly different context—where the parents have accepted the district's eligibility finding but have challenged the proposed placement. In this case, the school district made its eligibility and placement decisions based on its expert's observation of the child in his present setting (a private school) but then refused to allow the parents' expert to observe the placement proposed by the district. The parents sought assistance from the administrative hearing officer but were rebuffed, then sought assistance from the trial court by way of a petition for a writ of mandate but were rebuffed again.

---

[1] Subsequent undesignated section references are to the Education Code.

■ Because the parents have a statutory right to have their expert testify at their administrative hearing, they ipso facto are entitled to have their expert observe the proposed placement *before* they participate in the administrative hearing at which the propriety of the proposed placement will be determined. We reverse.

## FACTS

Benjamin G., a 10-year-old autistic child, lives in Long Beach. In June 2003, Benjamin's parents asked the Long Beach Unified School District to refer Benjamin for an assessment to determine his eligibility for IDEA services.[2] In August, with the assessment request still pending, Benjamin's parents enrolled him in Village Glen, a private school (where Benjamin is still enrolled at his parents' expense). The District gave Benjamin's parents a written assessment plan proposal in which Benjamin was to be assessed by a school psychologist "via classroom observation." Benjamin's parents accepted the proposal, and a District-employed school psychologist twice observed Benjamin in his Village Glen classroom. In December, the District convened an "Individualized Education Program" meeting, and as a result of that meeting found Benjamin eligible for IDEA services and offered him full-time placement in a special day class at the District's Lowell School. Benjamin's parents accepted the eligibility finding but did not consent to the Lowell School placement, and requested an administrative hearing before the California Special Education Hearing Office (SEHO).

In February 2004, Benjamin's parents submitted a request to have their expert (Jan Blacher, Ph.D.) observe the proposed class at the Lowell School.[3] The District denied the request, and denied a renewed request submitted later the same month. In March, Benjamin's parents added new allegations to their pending SEHO proceedings, claiming the proposed placement at the Lowell

---

[2] Section 56029 defines a " '[r]eferral for assessment' " as "any written request for assessment to identify an individual with exceptional needs" made by a parent, guardian, teacher, other service provider, or foster parent. Section 56320 provides that, "[b]efore any action is taken with respect to the initial placement of an individual with exceptional needs in special education instruction, an individual assessment of the pupil's educational needs shall be conducted, by qualified persons," in accordance with other provisions of the statute.

[3] Subdivision (b) of section 56329 provides that "[a] parent . . . has the right to obtain, at public expense, an independent educational assessment of the pupil from qualified specialists . . . if the parent . . . disagrees with an assessment obtained by the public education agency . . . . *If a public education agency observed the pupil in conducting its assessment, or if its assessment procedures make it permissible to have in-class observation of a pupil, an equivalent opportunity shall apply to an independent educational assessment of the pupil in the pupil's current educational placement and setting, and observation of an educational placement and setting, if any, proposed by the public education agency, regardless of whether the independent educational assessment is initiated before or after the filing of a [SEHO] hearing proceeding.*" (Italics added.) This section is the subject of this appeal.

School was not appropriate for Benjamin's needs (20 U.S.C. § 1400(d)(1)(A)), and asking for an order compelling the District to pay for Benjamin's schooling at Village Glen.[4] In April, in preparation for the administrative hearing, Benjamin's parents filed a formal motion in the pending SEHO proceedings, asking for an order compelling the District to allow Dr. Blacher to observe the proposed Lowell School placement. The District opposed the motion, and SEHO denied it, "ruling as a matter of statutory construction that section 56329 only entitles a student to an opportunity for expert observation of a proposed special education placement if the observation is undertaken in conjunction with an independent educational assessment."

In August, Benjamin (through a guardian ad litem) filed a petition for a writ of mandate (Code Civ. Proc., § 1085), naming SEHO as respondent and the District as real party in interest, and asking for orders compelling SEHO and the District to allow Dr. Blacher to observe the proposed Lowell School placement. The District answered and demurred concurrently, contending Benjamin had failed to exhaust his administrative remedies because the SEHO hearing had not yet been held. The trial court sustained the demurrer without leave to amend and dismissed Benjamin's petition.

## DISCUSSION

### A.

■ IDEA and the California statutory scheme promise a free and appropriate public education to disabled and other special needs students, and both encourage parental participation at every stage of the process through which those goals are accomplished. To these ends, our school districts are required to locate potentially eligible children, assess and evaluate them, determine which children are eligible for benefits, develop individual programs for eligible children, and propose school placements for them. (§§ 56000, 56171, 56300, 56301, 56327, 56337; *Amanda J. ex rel. Annette J. v. Clark Cnty. School* (9th Cir. 2001) 267 F.3d 877, 882, 891–892; *Maroni v. Pemi-Baker Regional School Dist.* (1st Cir. 2003) 346 F.3d 247, 256; *Clay T. v. Walton County School Dist.* (M.D.Ga. 1997) 952 F.Supp. 817, 822; *Petties v. District of Columbia* (D.D.C. 1995) 888 F.Supp. 165, 170.)

---

[4] When parents disagree with a school district's proposed placement, IDEA allows them to unilaterally place their child in a private school and then seek reimbursement in an administrative hearing, provided they are able to show that the proposed public placement violated IDEA *and* that their private school placement was proper under IDEA. (20 U.S.C. § 1412(a)(10)(C)(ii); 34 C.F.R. § 300.403(b) (2004); *Deal v. Hamilton County Bd. of Educ.* (6th Cir. 2004) 392 F.3d 840, 855; *Shapiro ex rel. Shapiro v. Paradise Valley Unified* (9th Cir. 2003) 317 F.3d 1072, 1079–1080; *Greenland School Dist. v. Amy N.* (1st Cir. 2004) 358 F.3d 150, 158, fn. 5.)

More specifically, parents who suspect their child has a qualifying disability are entitled to refer the child for assessment, to participate in meetings of any group that determines the child's eligibility, to refuse to consent to any assessment proposed for their child, and to participate as members of the team that determines their child's placement. (§§ 56171, 56300, 56301, 56304, 56321, 56329, 56341, subd. (b)(1), 56341.1, subds. (a)(1), (e), 56341.5, 56342.5, 56346.) If parents disagree with the school district's *assessment of their child*, the parents have a right to an independent educational assessment at the district's expense—meaning an evaluation by someone other than a district employee but using the same criteria as the district's evaluation. (20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(a)(3)(i), (ii), (b), (e)(1) (2004).) If the parents disagree with the school district's *proposed placement*, the parents may unilaterally enroll their child in a private school and seek reimbursement from the district upon a showing (at an administrative hearing) that both the proposed public placement violated IDEA *and* that their private school placement was proper under IDEA. (20 U.S.C. § 1412(a)(10)(C)(ii); 34 C.F.R. § 300.403(c); *Deal v. Hamilton County Bd. of Educ., supra,* 392 F.3d at p. 855; *Shapiro ex rel. Shapiro v. Paradise Valley Unified, supra,* 317 F.3d at pp. 1079–1080; *Greenland School Dist. v. Amy N., supra,* 358 F.3d at p. 158, fn. 5.)

IDEA acknowledges the fact that school districts have better access to information and more educational expertise than parents and thus provides for a "due process" hearing to "level the playing field" by permitting the parents to present all the evidence they can muster to challenge the district's decision. (*Burlington School Comm. v. Mass. Dept. of Ed.* (1985) 471 U.S. 359, 368–369, 373 [85 L.Ed.2d 385, 105 S.Ct. 1996]; *Davis v. District of Columbia Bd. of Ed.* (D.D.C. 1981) 522 F.Supp. 1102, 1107–1108.) To that end, IDEA gives the child and his parents the right to be advised by experts, to have those experts testify at their due process hearing, and to have someone other than a district employee as a hearing officer. (20 U.S.C. § 1415(h)(1), (2); §§ 56504.5, 56505, subds. (e)(1), (e)(2); *Goleta Union Elementary School Dist. v. Ordway* (C.D.Cal. 2002) 248 F.Supp.2d 936, 940; *Heather S. by Kathy S. v. State of Wis.* (E.D.Wis. 1996) 937 F.Supp. 824, 830, affd. (7th Cir. 1997) 125 F.3d 1045.)

**B.**

In 2001, a SEHO hearing officer denied a student's motion for an order compelling a school district to allow the student's experts to view the district's proposed placement. (*Student v. Ocean View Elementary School District* (July 10, 2001) SEHO SN 1316-00.)[5] Senate Bill No. 145, introduced on February 6, 2003, took issue with the SEHO ruling and proposed

---

[5] At the parties' request, we have judicially noticed (1) the order in the Ocean View Elementary School District proceedings and (2) the legislative history of the statute enacted in response to that order.

legislation to "require a local educational agency to allow an independent educational assessment to be conducted, including the observation by an independent assessor of the pupil in the pupil's current or proposed educational placement, regardless of whether the assessment is initiated before or after the filing of a due process hearing proceeding. To the extent school districts would be required to perform additional independent educational assessments, [the bill imposed] a state-mandated local program." (Legis. Counsel's Dig., Sen. Bill No. 145 (2003–2004 Reg. Sess.) as introduced on Feb. 6, 2003, p. 1.)

As the proponent of the bill explained in a letter to the Los Angeles Unified School District, "[i]f the parent cannot have a professional look at where the district proposes to place the student and must take every recommended change on faith, the parent may suspect there is something about the proposed placement which the district does not want exposed. Under those circumstances, parents may often opt for the hearing. If a proposal to change a child's placement is appropriate and has been carefully considered prior to being proposed, a school should not be hesitant about revealing the placement to an independent evaluator." (Sen. Alpert, sponsor of Sen. Bill No. 145 (2003–2004 Reg. Sess.) letter to Legis. Advocate, Los Angeles Unified School District, June 16, 2003.) SEHO agreed and supported the proposed legislation, explaining that it would "clarify the hearing officer's authority to guarantee a fair opportunity for both sides of the dispute to properly assess the child." (SEHO letter to Sen. Alpert, May 6, 2003.)[6]

As originally proposed, the bill allowed observation by the independent expert of the pupil in his "current or proposed educational placement" (Legis. Counsel's Dig., Sen. Bill No. 145 (2003–2004 Reg. Sess.) as introduced Feb. 6, 2003, p. 1), which meant the parents had to accept the proposed placement at least temporarily if they wanted their expert to observe the child in that setting. But the actual statute, as amended and unanimously adopted by both the Senate and the Assembly (Stats. 2003, ch. 368, § 1), gives the parents the right to have their expert observe the proposed placement without regard to whether their child is present, so that they need not remove him

---

[6] The proposed legislation was applauded by several nonprofit agencies (Protection & Advocacy, Inc., Californians for Inclusive Schools, Citizens Commission on Human Rights, Los Angeles Chapter, the California Association of Family Empowerment Centers, and the Youth and Education Law Project) and by many parents on behalf of their disabled children, but was not welcomed by all of California's school districts. This letter to Senator John Vasconcellos sums up the opposition: "We in Campbell Union School District are capable and willing to assess our children and do not need outside assessment agencies to do these services for us. That would be a complete waste of money. Special Education is already over legislated and under funded. Thank you for your help." (Superintendent Johanna VanderMolen, Campbell Union School District, letter to Sen. Vasconcellos, Mar. 28, 2003.)

from his present placement while they are in the midst of challenging the proposed placement. (§ 56329, subd. (b).)

Thus, subdivision (b) of section 56329 provides, as relevant, that: "A parent . . . has the right to obtain, at public expense, an independent educational assessment of the pupil from qualified specialists . . . if the parent . . . disagrees with an assessment obtained by the public education agency . . . . *If a public education agency observed the pupil in conducting its assessment, or if its assessment procedures make it permissible to have in-class observation of a pupil, an equivalent opportunity shall apply to an independent educational assessment of the pupil in the pupil's current educational placement and setting, and observation of an educational placement and setting, if any, proposed by the public education agency,* regardless of whether the independent educational assessment is initiated before or after the filing of a due process hearing proceeding." (Italics added.)[7]

## C.

With these rules in mind, we turn to the case before us, where the District refused to permit Benjamin's expert to observe his proposed placement before his due process hearing was held, and where the trial court denied Benjamin's petition for an order compelling the District to allow the observation. Both rulings were wrong.[8]

First, there are no administrative remedies for Benjamin to exhaust. The very purpose of subdivision (b) of section 56329 is to permit the independent observation *before* the hearing is held so that the student and his parents are in a position to challenge the proposed placement at the hearing. (Pt. B., *ante;* and see *Shively v. Stewart* (1966) 65 Cal.2d 475, 480–482 [55 Cal.Rptr.

---

[7] In documents given to the Governor when the bill was submitted for his signature, the author explained that the parent facing an evidentiary hearing "need[s] an educator to explain why the district's program change is inappropriate. And that educator must have seen the disputed program in order to testify competently." (Sen. Alpert, sponsor of Sen. Bill No. 145 (2003–2004 Reg. Sess.) Letter to Governor, Sept. 9, 2003.)

[8] We summarily dispose of the District's technical points. First, we reject the District's contention that Benjamin's petition should have sought relief by way of administrative mandamus (Code Civ. Proc., § 1094.5) rather than traditional mandamus (Code Civ. Proc., § 1085). Benjamin's challenge is to the District's refusal to allow his expert's observation, not to the conduct of an administrative hearing which has yet to be held (and cannot meaningfully proceed until Benjamin's expert has a chance to prepare). (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 752 [125 Cal.Rptr.2d 488].) Second, we reject the District's claim that the petition is fatally flawed because it was verified by Benjamin's lawyer rather than his guardian ad litem. The lawyer verified the allegations based on her own personal knowledge of the facts, and no more was required. (*Ware v. Stafford* (1962) 206 Cal.App.2d 232, 237 [24 Cal.Rptr. 153].) The District's other challenges to the verification and to other matters of form rather than substance are equally without merit, and thus summarily rejected.

217, 421 P.2d 65] [the exhaustion doctrine does not foreclose interim review of an administrative agency's refusal to allow discovery]; *Davis v. District of Columbia Bd. of Ed., supra,* 522 F.Supp. at p. 1107.) The District's citations to cases in which a party is trying to bypass an administrative proceeding are inapposite. (E.g., *Robb v. Bethel School Dist. # 403* (9th Cir. 2002) 308 F.3d 1047, 1050.)

■ Second, we reject the District's contention that Benjamin's right to have his expert observe the District's proposed placement is contingent upon his exercise of his right to conduct an expensive and time-consuming independent educational assessment. Where, as here, the student and his parents have accepted the District's assessment and have limited their challenge to the District's proposed placement, the statute cannot reasonably be read otherwise—because an "independent educational assessment" evaluates the child, not the propriety of his placement. §§ 2 [the provisions of the Education Code are to be liberally construed with a view to effect its objects and to promote justice], 56329, subd. (b); see §§ 56171, 56300, 56301, 56304, 56321, 56341, subd. (b)(1), 56341.1, subds. (a)(1), (e), 56341.5, 56342.5, 56346; *Katz v. Los Gatos-Saratoga Joint Union High School Dist.* (2004) 117 Cal.App.4th 47, 55 [11 Cal.Rptr.3d 546]; *North v. District of Columbia Bd. of Ed.* (D.D.C. 1979) 471 F.Supp. 136, 141, fn. 8 [a dispute over appropriateness can be based on a disagreement about the student's needs *or* the propriety of the proposed placement].) As the Second Circuit recently observed in *Murphy v. Arlington Cent. School Dist. Bd. of Ed.* (2d Cir. 2005) 402 F.3d 332, 338, "[e]xpert testimony is often critical in IDEA cases, which are fact-intensive inquiries about the child's disability and the effectiveness of the measures that school boards have offered to secure a free appropriate public education. The IDEA's procedural safeguards ensure that children and parents can realize whatever benefits are due. Thus, for example, parties to IDEA proceedings have 'the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities.' "

Third, given Benjamin's statutory right to have his expert observe the proposed placement, the District's obligation to allow the observation, the obvious harm to Benjamin if his parents are forced to participate in the due process hearing with a partially prepared expert, the absence of any other remedy (administrative or otherwise), and the absence of any allegations or evidence controverting Benjamin's allegations and evidence, the demurrer should have been overruled and the matter set for hearing on the petition.[9]

---

[9] We are aware that many of the issues raised by Benjamin's petition have been resolved in his favor by our opinion on this appeal, but that does not mean the District can be deprived of its right to a hearing. The matter is before us now because a demurrer was sustained without leave to amend, and it remains for the trial court to make the necessary findings of fact consistent with the views expressed in this opinion, and to enter judgment accordingly.

## DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court with directions to vacate its order sustaining the demurrer without leave to amend, enter a new order overruling the demurrer, and promptly set the matter for hearing on Benjamin's petition for a writ of mandate. Benjamin is awarded his costs of appeal.

Spencer, P. J., and Mallano, J., concurred.